FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 03, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSELUIS B., | No. 1:17-CV-03209-JTR |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 14, 18. Attorney D. James Tree represents Joseluis B. (Plaintiff); Special Assistant United States Attorney Daphne Banay represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on March 4, 2014, Tr. 81-82, alleging disability since September 30, 2008, Tr. 205, 212, due to anxiety, back pain, bilateral knee pain, chronic headaches, depression, diabetes, insomnia, and neck

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

pain. Tr. 232. The applications were denied initially and upon reconsideration. Tr. 133-47, 150-60. Administrative Law Judge (ALJ) Ilene Sloan held a hearing on April 11, 2016 and heard testimony from Plaintiff, a witness Sophia Lopez, and vocational expert Leta Berkshire. Tr. 34-80. At the hearing, Plaintiff amended his date of onset to April 1, 2012. Tr. 38-41. The ALJ issued an unfavorable decision on July 12, 2016. Tr. 13-29. The Appeals Council denied review on October 12, 2017. Tr. 1-2.[1] The ALJ's July 12, 2016 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§ 405(g), 1383(c). Plaintiff filed this action for judicial review on December 14, 2017. ECF Nos. 1, 4.

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 30 years old at the amended date of onset. Tr. 205. The highest level of education Plaintiff completed was the eleventh grade in 1998. Tr. 233. His reported work history includes the jobs of laborer, foreman, and segregator. *Id*. Plaintiff reported that he stopped working on September 30, 2008 due to his conditions. Tr. 232.

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is

---

[1] It appears a page is missing from the Appeal Council's denial. Upon remand, the ALJ will supplement the record with the missing page.

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs which the claimant can perform exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of

"disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On July 12, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 1, 2012, the alleged date of onset. Tr. 15.

At step two, the ALJ determined Plaintiff had the following severe impairments: diabetes mellitus; asthma; and obesity. Tr. 15.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 19.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of medium work with the following limitations:

> The claimant is capable of lifting and/or carrying up to 50 pounds occasionally and 25 pounds frequently, standing and/or walking a total of 6 hours in an 8-hour day, and sitting for a total of 6 hours in an 8-hour day. The claimant is limited to frequent climbing of ramps/stairs, occasional climbing of ladders/ropes/scaffolds, and frequent kneeling, crouching and crawling. The claimant is able to unlimitedly balance and stoop. The claimant must avoid concentrated exposure to extreme heat, wetness, humidity and vibration.

Tr. 20. The ALJ identified Plaintiff's past relevant work as abattoir (slaughterhouse) supervisor and concluded that Plaintiff was able to perform this past relevant work. Tr. 27.

As an alternative to a finding of ineligibility at step four, the ALJ made a step five determination that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the

national economy Plaintiff could perform, including the jobs of industrial cleaner, hotel/motel housekeeper, and semi-conductor die loader. Tr. 28-29. The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from April 1, 2012, through the date of the ALJ's decision. Tr. 29.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to find Plaintiff's right knee and spinal impairments as medically determinable and severe at step two, (2) failing to properly weigh the medical source opinions, and (3) failing to properly address Plaintiff's symptom statements.

**DISCUSSION[2]**

**1.   Step Two**

Plaintiff argues that the ALJ erred by failing to find Plaintiff's right knee and spinal impairments as medically determinable and severe at step two. Tr. 3-6.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). Basic work

---

[2]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b) 416.922(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted). A claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. §§ 404.1521, 416.921.

Plaintiff asserts that the ALJ found the impairments as not medically determinable because there were some negative findings and because the impairments were not severe enough. ECF No. 14 at 5. Plaintiff argues that the issue of severity can only be considered once there has been a determination as to whether or not an impairment is medically determinable. *Id*.

### A. Right Knee

In coming to her step two determination, the ALJ found that the alleged right knee and spinal impairments were not medically determinable. Tr. 16. In addressing the right knee impairment, the ALJ pointed to unremarkable imaging of Plaintiff's knees. *Id*. (*citing* Tr. 310-13, 531, and 609). The first citation by the ALJ was to Exhibit 1F, which includes unremarkable imaging of Plaintiff's left knee dated November 22, 2010 and October 18, 2010. Tr. 310-12. It also included an MRI of the right knee on November 22, 2010 showing a cortical-based lesion of the distal femoral metaphysis, which may represent a fibrous cortical defect or a healed non-ossifying fibroma. Tr. 313. The second citation by the ALJ was to Dr. Drenguis' review of the imaging, stating that there was an unremarkable MRI of the left knee on November 20, 2010 and an unremarkable right knee x-ray on October 18, 2010. Tr. 531. The third citation by the ALJ was to a June 3, 2014 x-ray of the lumbar spine. Tr. 609. The ALJ continued to provide citations to the record addressing normal examination findings. Tr. 16 (*citing* Tr. 616 (an x-ray of the right knee showing mild degenerative narrowing), Tr. 534 (stating the knee had

normal motor strength, sensation, and reflexes), Tr. 406 (while palpable crepitus was present, it was unclear if this was from the lateral joint line or from the anterior drawer and other Lachmann and Steinmann tests were normal).

Plaintiff argues that the MRI of the right knee showing the cortical-based lesion, Tr. 313, combined with an x-ray from November 8, 2010 of the right knee showing "some mild degenerative narrowing in the medial compartment," Tr. 616, combined with examinations showing a limited range of motion, Tr. 534, and palpable crepitus, Tr. 406, is sufficient to establish a medically determinable impairment. ECF No. 14 at 4.

All of the citations Plaintiff provided in his briefing as evidence of a medically determinable impairment of the right knee were cited specifically by the ALJ. However, the ALJ portrays Plaintiff's MRI of the right knee as unremarkable, when it actually showed a cortical-based lesion. This is considered a medically determinable impairment by Dr. Hoskins, who reviewed the record for the State agency, Tr. 117, and who the ALJ gave great weight, Tr. 25. As such, the ALJ's finding that Plaintiff's right knee complaint was not a medically determinable impairment is not supported by substantial evidence.

Defendant argues that any error at step two would be harmless since step two was ultimately found in Plaintiff's favor. ECF No. 18 at 7. The Court disagrees. In rejecting the opinion of consultative medical examiner William R. Drenguis, M.D. the ALJ relied on her finding that Plaintiff's right knee impairment was not medically determinable and the imagining was unremarkable. Tr. 24. Therefore, the ALJ's rejection of Dr. Drenguis' opinion is not supported by substantial evidence. The ALJ is accurate that Dr. Drenguis himself found that the imaging he had of Plaintiff's right knee was unremarkable, Tr. 531. However, Dr. Drenguis reviewed Plaintiff's x-ray of the right knee and not the MRI showing the cortical-based lesion. Therefore, this case is remanded for the ALJ to properly address Plaintiff's right knee impairment at step two and call a medical expert to

testify regarding whether the impairment is medically determinable, and if it is, whether it is severe.

B.   **Spinal Impairments**

When addressing the Plaintiff's spine, the ALJ again found that there were no medically determinable spinal impairments by citing unremarkable imaging and no evidence of neurologic compromise. Tr. 16. In support of her determination, the ALJ cited a May 22, 2014 x-ray of Plaintiff's lumbar spine which was unremarkable. *Id*. (*citing* Tr. 536, 609). Additionally, the ALJ cited the May 22, 2014 evaluation by Dr. Drenguis showing full motor strength, mildly antalgic gait, negative straight leg raise test, and normal muscle bulk and tone. *Id*. (*citing* Tr. 533-34). In response, Plaintiff cites to providers who based their opinions on Plaintiff's back pain and to range of motion testing revealing limitations in the neck and spine. ECF No. 14 at 7-8. While Plaintiff is correct that various providers diagnosed a spinal impairment, a diagnosis is not sufficient to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1521, 416.921 (A claimant's impairments "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques," and "a physical or mental impairment must be established by objective medical evidence from an acceptable medical source. We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)."). However, Plaintiff is accurate that there are other objective tests that support the presence of an impairment. The record reflects Plaintiff's range of motion in his back is reduced and tenderness is elicited with percussion. Tr. 534-35. But one examination showing tenderness is not sufficient to support a finding of a medically determinable impairment when all other objective evidence is essentially normal. Therefore, the ALJ did not err in her determination that Plaintiff's alleged spinal disorder was not a medically determinable impairment.

However, since this case is being remanded for the ALJ to properly address Plaintiff's right knee impairment and make a new step two determination, the ALJ will supplement the record with any outstanding evidence and readdress Plaintiff's spinal impairments in light of the record as a whole upon remand.

**2. Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by treating physician Aaron Anderson, D.O., examining physician, William R. Drenguis, M.D., and examining psychiatrist, Elsa K. Haloman, M.D. ECF No. 14 at 6-17.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d

at 830-31.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating her interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### A. Aaron Anderson, D.O.

On March 9, 2015, Dr. Anderson completed a Medical Report form in which he listed Plaintiff's diagnoses as depression/anxiety, diabetes mellitus, asthma, chronic lumbago, and chronic knee pain. Tr. 569. He opined that due to Plaintiff's lumbago, he would have to lay down for two hours in the morning and that if he were to attempt a forty hour work week, he would likely miss an average of two days per month. Tr. 569-70. Additionally, in the treatment record accompanying the form, Dr. Anderson listed Lumbago as one of Plaintiff's diagnoses and stated that he "filled out disability paperwork, patient not completely disabled but will have difficulty performing full time job especially if it requires manual labor and significant lifting." Tr. 538. The ALJ gave Dr. Anderson's opinion little weight because (1) he provided little objective medical evidence or explanation for the opined limitations and (2) he relied on Plaintiff's subjective report of limitations. Tr. 25.

In his rejection of the opinion, the ALJ relied heavily on the step two finding that Plaintiff had no medically determinable spinal impairment. Tr. 25. Since the case is being remanded for the ALJ to address the step two determination, including Plaintiff's spinal impairments, *see supra*, the ALJ will readdress Dr. Anderson's opinion on remand. Additionally, the ALJ failed to address Dr. Anderson's statement regarding Plaintiff's ability to work full time in the March 9,

2015 treatment record.  Upon remand, the ALJ will address this as part of Dr. Anderson's opinion.

### B.  William R. Drenguis, M.D.

As discussed above, the ALJ's rejection of Dr. Drenguis' opinion was premised on the determination that Plaintiff's right knee imaging reports were unremarkable and the alleged right knee impairment was not medically determinable.  Considering this determination was not supported by substantial evidence, *see supra*, the ALJ's rejection of any portion of this opinion was an error.  Therefore, the ALJ will readdress Dr. Drenguis' opinion in full upon remand.

### C.  Elsa K. Haloman, M.D.

On May 31, 2014, Dr. Haloman completed a consultative psychological evaluation of Plaintiff.  Tr. 537-43.  She opined that Plaintiff "cannot complete a normal workday or workweek without interruptions from a psychiatric condition.  Though he blames a lot of his physical symptoms on diabetes, I gather that he also has a significant amount of anxiety that leads to panic attacks with psychical symptoms," and that "[h]e is not able to deal with the usual stress encountered in the workplace."  Tr. 542-43.  Dr. Haloman makes it clear that "[i]t is difficult to discern whether these symptoms are related to blood glucose or anxiety," and that "[t]here are psychological factors that seem to be interfering with his compliance to diabetes management."  Tr. 543.

The ALJ rejected Dr. Haloman's opinion because (1) it is not supported by objective evidence, (2) it is not consistent with Plaintiff's demonstrated functioning/reported activities, and (3) it relies on Plaintiff's self-reports.  Tr. 26.

The ALJ's first two reasons for rejecting the opinion are mere conclusion that she failed to support with specific findings.  *See Embrey*, 849 F.2d at 421-22 (The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct.").

The ALJ failed to provide any reference to the record of objective findings inconsistent with the opinion and she failed to provide any functional ability or reported activity that was inconsistent with the opinion.

The third reason, that the opinion was based on Plaintiff's self-reports, is more firmly established by the ALJ. The ALJ found that Dr. Haloman relied on Plaintiff's self-reports because she stated that she did not witness any interruptions or symptoms during her evaluation and that Plaintiff reported the inability to tolerate stress upon his return to work. Tr. 26. However, what the ALJ appears to overlook in her conclusion is the difficulty of identifying which symptoms are attributed to Plaintiff's mental health impairments and which symptoms are attributed to his diabetes. Dr. Haloman was only provided seven treatment reports in forming her opinion, Tr. 537, and expressed difficulty in parsing out limitations resulting from Plaintiff's diabetes and his mental health impairments, Tr. 543. A result of rejecting Dr. Haloman's opinion was that the ALJ found no severe mental health impairments at step two. Tr. 17-18. The ALJ failed to call any medical or psychological experts to assist in discerning the diabetes and mental health impairment and resulting limitations. *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) (the ALJ "must be careful not to succumb to the temptation to play doctor"). Upon remand, the ALJ will call a medical expert and a psychological expert to address Plaintiff's severe impairments at step two and limitations in the residual functional capacity determination.

3. **Plaintiff's Symptom Statements**

Plaintiff asserts the ALJ erred by finding Plaintiff's symptom statements were not entirely consistent with the medical evidence and other evidence in the record. ECF No. 14 at 17-21.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent

affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834. "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The evaluation of a claimant's symptom statements and their resulting limitations relies, in part, on the assessment of the medical evidence. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); S.S.R. 16-3p. Therefore, in light of the case being remanded for the ALJ to readdress step two and the medical source opinions in the file, a new assessment of Plaintiff's subjective symptom statements will be necessary.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to make a new step two determination, address the medical source opinions in the file, and address Plaintiff's symptom statements. Additionally, the ALJ will supplement the record with any outstanding evidence and call a medical expert (or experts, if necessary, to cover both the musculoskeletal and endocrine body systems), a psychological expert, and a vocational expert to testify at a supplemental hearing.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED December 3, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE